UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| ANDREW BAILEY, | |
|---|---|
| *Plaintiff,* | Civil No. 3:15cv1835 (JBA) |
| *v.* | |
| GROCERY HAULERS, INC., | |
| *Defendant.* | March 16, 2017 |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

Plaintiff Andrew Bailey brings this action against Defendant Grocery Haulers, Inc. ("GHI") alleging wrongful discharge in violation of § 31-49 of the Connecticut General Statutes (Count One) and employment discrimination in violation of §§ 46a-60 and 46a-81c[1] of the Connecticut General Statutes (Count Two). Defendant moves [Doc # 38] to dismiss the Complaint in its entirety.

**I.    Facts Alleged[2]**

---

[1] Plaintiff's Complaint actually alleges violation of 46a-81a, but that Section merely provides the definition for "sexual orientation," whereas the cause of action for discrimination based upon sexual orientation is found in Section 46a-81c. When Plaintiff filed his Complaint with the Connecticut Commission on Human Rights and Opportunities (the "CHRO") he checked off the box for 46a-81c. The Court construes Plaintiff's Complaint as alleging violation of 46a-81c.

[2] Defendant objects [Doc. # 37] to Plaintiff's Second Amended Complaint filed on March 25, 2016 claiming it was untimely, failed to comply with the Court's directive to include allegations addressing Plaintiff's employment status and improperly added allegations without seeking leave of the Court. The Court overrules Defendant's objection. Regarding his delay, Plaintiff explains that he accidentally "diaried the amended complaint filing date as March 25, 2016 instead of March 22, 2016." (Pl.'s Opp'n. [Doc. # 46] at 31.) Moreover, Defendant has not claimed that it has been prejudiced by this three-day delay. Finally, Defendant's contention that dismissal is required because Plaintiff's Amended Complaint failed to include certain additional allegations and improperly added others, is without merit. Once the Plaintiff had leave to file the Amended Complaint, as was given at the pre-filing conference, it was within his discretion to determine how

Beginning in 2006 Plaintiff was employed by Defendant as a tractor trailer truck driver. (Second Amended Complaint ("Am. Compl.") [Doc. # 33] ¶¶ 1-2.) Plaintiff's position required him to hold a commercial driver's license, which in turn required him to follow the rules and regulations established by the United States Department of Transportation. (*Id.* ¶¶ 2–3.)

On October 2, 2014, after Plaintiff had been driving and on duty over nine hours without adequate rest, Defendant asked him "to drive to East Brunswick[,] New Jersey from Connecticut despite the fact that the assignment would put the Plaintiff's driving time in excess of the United States Department of Transportation rules and regulations for on duty time and drive time." (*Id.* ¶ 6.) Plaintiff refused the assignment and was subsequently discharged by Defendant, purportedly because of this refusal.[3] (*Id.*)

Plaintiff further alleges that employees and agents of Defendant, specifically a new dispatcher hired by Defendant in June 2014, made offensive comments to Plaintiff because they perceived him to be bisexual. (*Id.* ¶ 9 of Count Two.) These individuals harassed and treated Plaintiff differently than all other employees. (*Id.* ¶ 10 of Count Two.) Before filing this lawsuit, Plaintiff filed an administrative complaint charging Defendant with violating Conn. Gen. Stat. § 46a-60, 46a-81a and Title VII of the Civil Rights Act of 1964 with the State of Connecticut

---

he wished to amend. Therefore, the Second Amended Complaint is the operative Complaint for this motion.

[3] Plaintiff never actually states in his Complaint that he refused this assignment, however read in context it is clear that he did. The Complaint states "Defendant alleged that the reason for Plaintiff's discharge was [his] refusal to work an assignment" (*id.* ¶ 5) and alleges that "Plaintiff's wrongful discharge was a direct result of the Defendant's failure to provide [him] with a safe place in which to work" (*id.* ¶ 7).

Commission on Human Rights and Opportunities (the "CHRO"), which granted him a release of jurisdiction. (*Id.* ¶ 12.)

The following additional facts are not included in the Complaint, but are part of the record for this motion to dismiss.[4] Plaintiff was a member of a union and party to a collective bargaining agreement (the "CBA"), which document is integral to the Complaint.[5] *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment."); *Local 1035, Int'l Bhd. of Teamsters v. Pepsi-Cola Allied Bottlers, Inc.*, 83 F. Supp. 2d 301, 305 n.4 (D. Conn. 1999) (On a motion to dismiss, a court may consider "'integral' agreements and documents . . . even though they are not otherwise attached or referenced in the Complaint" such as a CBA which "defines the rights, duties and obligations by and among the named parties to [the] action and [is] integral to the Amended Complaint.").

The Court also takes judicial notice of the complaints Plaintiff filed with CHRO. *See Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991) ("In determining the adequacy of a claim

---

[4] Defendant styles its motion as a Motion to Dismiss and/or for Summary Judgment. The Court sees no need to convert this motion to dismiss into a summary judgment motion because it relies only on the existence of the CBA and the charges filed by Plaintiff with the CHRO, both of which, although not attached to the Complaint, are either integral to it or are documents of which this Court may take judicial notice.

[5] There is some dispute regarding which version of the CBA was in effect for the relevant time period, but for purposes of this motion the content of CBA itself does not matter, but rather its existence alone is determinative.

under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, *and to matters of which judicial notice may be taken*.) (emphasis added); *Johnson v. Cty. of Nassau*, 411 F. Supp. 2d 171, 178 (E.D.N.Y. 2006) (Court "may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment.") (internal quotation marks and citations omitted).

On December 16, 2014, Plaintiff filed a complaint with the CHRO against the union, claiming that the union failed to represent him at an arbitration because of his race (Jamaican) and color (Black). (Ex. A-5 (Union CHRO Complaint) to Def.'s Mot. to Dismiss.) On that same date, Plaintiff filed a complaint with the CHRO against Defendant, claiming he was terminated on the basis of his sexual orientation (perceived bi-sexual) in violation of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a- 60(a)(1), 46a-81c, and under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e and the Civil Rights Act of 1991 (the "GHI CHRO Complaint"). (*See* Am. Compl. ¶12; Ex. A-6 (GHI CHRO Complaint) to Def.'s Mot. to Dismiss.)

II.     Discussion[6]

---

[6] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

### A. Count One

Count One of Plaintiff's Complaint alleges "Defendant's discharge of the Plaintiff was wrongful and in violation of public policy . . . [as] reflected by Connecticut General Statutes Section 31-49, which requires employers to provide employees with safe work places. (*See* Am. Compl. ¶ 8 Count One.) Defendant maintains that Plaintiff's claim for wrongful discharge is a common law claim, which must fail because Plaintiff has not pled "that he was an at-will employee whose discharge violated the public policy embodied by Conn. Gen. Stat. § 31-49." (Def.'s Mot. to Dismiss at 22.)

It is well established under Connecticut law that "contracts of permanent employment . . . are terminable at will, meaning no just cause need be established." *Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 474 (1980). However, *Sheets* carved out an exception to that rule, recognizing that "public policy imposes some limits on unbridled discretion to terminate the employment of someone hired at will." *Id* at 476. Thus, *Sheets* recognized a common law cause of action for wrongful discharge in situations where the reason for the discharge involved impropriety "derived from some important violation of public policy." *Id.,* at 475. This common law cause of action was created because "the employee [would] otherwise [be] without remedy and . . . permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated." *Atkins v. Bridgeport Hydraulic Co.,* 5 Conn. App. 643, 648 (1985) (internal quotations marks and citations omitted).

Therefore, an at-will employee may bring an action under Connecticut common law for wrongful discharge when the termination of his employment contravenes public policy and he would otherwise be without a remedy. *See e.g., Anderson v. Coca Cola Bottling Co.,* 772 F. Supp. 77, 82 (D. Conn. 1991). This cause of action is only available to workers who could be discharged

at will. *Sheets*, 179 Conn. at 475; *see also Tomlinson v. Bd. of Educ. of City of Bristol*, 226 Conn. 704, 734, 629 A.2d 333, 349 (1993) (citing *D'Ulisse–Cupo v. Board of Directors of Notre Dame High School*, 202 Conn. 206, 211 n. 1, 520 A.2d 217 (1987) ("As an exception to the general rule that contracts of employment are terminable at will, the right to recover in tort for wrongful discharge extends only to employees at will.") (internal quotation marks omitted). The Connecticut Supreme Court later clarified that the public policy serving as an exception to the at-will employment doctrine "refer[s] generally to violations of public policy as expressed in explicit statutory or constitutional provisions, or judicial decisions." *Faulkner v. United Techs. Corp., Sikorsky Aircraft Div.*, 240 Conn. 576, 585 (1997).

Here, Plaintiff's wrongful discharge claim is based upon Section 31-49, codified in 1902.[7] In *Parsons v. United Technicians Corporation, Sikorsky Aircraft Division*, the Connecticut Supreme Court held that

> [T]he mandate of public policy that [Section 31–49] embod[ies] gives a Connecticut employee a cause of action for wrongful discharge against an employer transacting business in Connecticut if the employee is discharged for refusing to work under conditions that pose a substantial risk of death, disease or serious physical harm and that are not contemplated within the scope of the employee's duties.

---

[7] Section 31-49 states in full:

It shall be the duty of the master to exercise reasonable care to provide for his servant a reasonably safe place in which to work, reasonably safe appliances and instrumentalities for his work and fit and competent persons as his colaborers and to exercise reasonable care in the appointment or designation of a vice-principal and to appoint as such vice-principal a fit and competent person. The default of a vice-principal in the performance of any duty imposed by law on the master shall be the default of the master.

Conn. Gen. Stat. § 31-49

243 Conn. 66, 80 (1997).

Defendant contends that because Plaintiff was a union member protected by a collective bargaining agreement he was not an at-will employee and thus cannot bring a common law wrongful discharge claim. (Def.'s Mot. to Dismiss at 23.) Plaintiff does not argue that he was an at-will employee; instead he claims that "[D]efendant erroneously argues that the Plaintiff cannot pursue a state statutory claim . . . under Connecticut General Statute Section 31-49." (Pl.'s Opp'n. to Def.'s Mot. to Dismiss at 17.)[8] However, there is no private cause of action under Section 31-49. *See Lopez v. Burris Logistics Co.*, 952 F. Supp. 2d 396, 414 (D. Conn. 2013) (quoting *Balog v. Shelton Restaurant, LLC*, No. CV040084313S, 2004 WL 1965919, at *5 (Conn. Super. Ct. Aug. 2, 2004)) ("*Parsons* did not recognize, either explicitly or implicitly, an independent cause of action grounded in a violation of § 31–49 . . . [T]he public policy embodied in § 31–49 sets a standard by which workplace safety may be measured that can be used to assess employer conduct in circumstances where an employer may be found liable through another mechanism, such as a wrongful discharge claim."). Therefore, it is evident that Plaintiff's wrongful discharge claim in Count One is not a statutory claim, but rather a common-law claim based on the public policy standards enunciated in Section 31-49 of the Connecticut General Statutes.[9] Because Plaintiff is

---

[8] Plaintiff also meekly argues that *Sheets* is inapposite and does not preclude him from raising a wrongful discharge claim even though he is not an at-will employee because the exception carved out in *Sheets* is not exclusive, but merely a product of the facts of that case. *Sheets'* progeny, cited *infra*, make clear though, that Plaintiff, as a member of a union covered by a CBA, has no common law wrongful discharge claim.

[9] Even Plaintiff's Complaint belies his claim that Count One is a statutory claim. It states that "Defendant's discharge of the Plaintiff was wrongful and in violation of public policy, which public policy is reflected by Connecticut General Statutes Section 31-49." (Am. Compl. ¶ 8 of Count One.) His arguments regarding *Carvelho v. International Bridge & Iron Company*, No. 3:99-cv-605 (CFD), 2000 U.S. Dist. LEXIS 4419 (D. Conn. Feb. 25, 2000) and *Anderson v. Coca Cola*

not an at-will employee, his common law wrongful discharge claim fails as a matter of law, and therefore the Court need not reach Defendant's alternative arguments.

### B. Count Two

Defendant also seeks dismissal of Plaintiff's Count Two, which alleges that Plaintiff was harassed and treated differently than all other employees and was discharged from employment based on the perception that he was bisexual in violation of Sections 46a-60 and 46a-81c of the Connecticut Fair Employment Practices Act (the "CFEPA") and in violation of Title VII. (Am. Compl. ¶ 10 of Count Two.) In support of dismissal, Defendant points out that neither Title VII nor Section 46a-60 of Connecticut's General Statutes afford any protection for sexual orientation. Defendant also claims that Plaintiff was required to, but did not, exhaust the grievance procedures provided by the CBA before filing suit.[10]

It is "well-settled in [the Second Circuit] and in all others to have reached the question that . . . Title VII does not prohibit harassment or discrimination because of sexual orientation.'" *Simonton v. Runyon*, 232 F. 3d 33, 35 (2d Cir. 2000); *see also DiPetto v, U.S. Postal Serv.*, 383 F. App'x 102, 104 n.1 (2d Cir. 2010); *Dawson v. Bumble & Bumble*, 398 F.3d 211, 217 (2d Cir. 2005);

---

*Bottling Company*, 772 F. Supp. 77 (D. Conn. 1991) are inapposite because both involve statutory causes of action. Plaintiff argues that he should be permitted to proceed "on his statutory claim" as in *Carvelho*. (Pl.'s Opp'n. to Def.'s Mot. to Dismiss at 18). In *Anderson*, as Defendant points out, the court did not analyze whether the claim satisfied the common-law wrongful discharge pleading requirements established in *Sheets*, finding instead that the plaintiff's claim was for retaliatory discharge, which cause of action is provided for by Conn. Gen. Stat. § 31-290a.

[10] In a footnote, Defendant contends that Plaintiff's Title VII claim is also precluded because, apart from the exhaustion procedure provided by the CBA, he failed to exhaust his administrative remedies as required by the statute. Because Title VII does not cover discrimination based upon sexual orientation the Court does not reach this issue.

*Jacobs v. Conn. Cmty. Tech. Colleges*, 837 F. Supp. 2d 1, 7 (D. Conn. 2011)).[11] Moreover, "sexual orientation" is not enumerated as a protected class in Section 46a-60.[12] Therefore, Plaintiff's claim cannot proceed under either of these statutes. Nonetheless, Section 46a-81c[13] provides Plaintiff

---

[11] While it is true that the EEOC has now stated that "sexual orientation is inherently a 'sex-based consideration' and an allegation of discrimination based on sexual orientation is necessarily an allegation of sex discrimination under Title VII" the Second Circuit has not similarly shifted stances and therefore this Court remains bound by its determination to the contrary. *See Tumminello v. Father Ryan High Sch., Inc.*, No. 16-5165, 2017 WL 395106, at *3 (6th Cir. Jan. 30, 2017) (quoting *Baldwin v. Foxx*, EEOC Appeal No. 0120133080, 2015 WL 4397641, at *5, 10 (July 15, 2015).

[12] Section 46(a)(60)(1) states that

it shall be a discriminatory practice in violation of this section: For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, gender identity or expression, marital status, national origin, ancestry, present or past history of mental disability, intellectual disability, learning disability or physical disability, including, but not limited to, blindness.

Conn. Gen. Stat. § 46a-60(a)(1).

[13] This section is titled "Sexual orientation discrimination: Employment" and states:

It shall be a discriminatory practice in violation of this section: (1) For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's sexual orientation or civil union status, (2) for any employment agency, except in the case of a bona fide occupational qualification or need, to fail or refuse to classify properly or refer for employment or otherwise to discriminate against any individual because of the individual's sexual orientation or civil union status, (3) for a labor organization, because of the sexual orientation or civil union status of any individual to exclude from full membership rights or to expel from its membership such individual or to

with a private right of action for discrimination based upon sexual orientation. *See* Conn. Gen. Stat. § 46a-100.

Defendant maintains that Plaintiff's discrimination claims must fail because Plaintiff did not exhaust the grievance procedures required by the CBA. In response, Plaintiff points to Section 31-51bb of the Connecticut General Statutes, which he contends permits him to proceed with his claims in this Court, despite the existence of a separate grievance procedure in the collective bargaining agreement.

An employee is generally "required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement" before bringing suit against his or her employer for breach of a collective bargaining agreement. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983)). However, as Plaintiff notes, Connecticut has a statute that specifically states "[n]o employee shall be denied the right to pursue, in a court of competent jurisdiction, a cause of action arising under the state or federal Constitution or under a state statute solely because the employee is covered by a collective bargaining agreement." Conn. Gen. Stat. § 31-51bb.

This statute has been interpreted by the Connecticut Supreme Court to have "eliminate[d] the requirement that a plaintiff who is subject to a collective bargaining agreement exhaust all

---

discriminate in any way against any of its members or against any employer or any individual employed by an employer, unless such action is based on a bona fide occupational qualification, or (4) for any person, employer, employment agency or labor organization, except in the case of a bona fide occupational qualification or need, to advertise employment opportunities in such a manner as to restrict such employment so as to discriminate against individuals because of their sexual orientation or civil union status.

Conn. Gen. Stat. § 46a-81c.

grievance and arbitration procedures before pursuing any statutory remedies in the trial court." *Genovese v. Gallo Wine Merchants, Inc.*, 226 Conn. 475, 481 (1993). Thus, "an employee who does *not* exhaust the grievance procedures established in a collective bargaining agreement may pursue a cause of action in the Superior Court if the cause of action is premised on an independent statutory claim." *Id.* (emphasis in original); *accord Nyenhuis v. Metro. Dist. Comm'n*, 300 Conn. 708, 716 (2011).[14] The legislature enacted Section 31–51bb "to ensure that employees covered by a collective bargaining agreement receive the same opportunity to litigate their statutory claims as those . . . not covered by a collective bargaining agreement. The defendant's narrow construction of § 31–51bb would defeat that legislative intent." *Id.* at 484 (citing 31 H. R. Proc., Pt. 13, 1988 Sess., pp. 4567–68).

Therefore, because Plaintiff's state discrimination claim is based upon the CFEPA, a state statutory claim, Section 31-51bb permits him to pursue his state discrimination claim without exhausting the procedure provided in the CBA. *See e.g., Kovachich v. State, Dep't of Mental Health & Addiction Servs.*, No. KNLCV136018881S, 2014 WL 5286883, at *7 (Conn. Super. Ct. Sept. 12, 2014) (holding that "[b]ecause the plaintiff's claim is based on a statute, [the CFEPA,] § 31–51bb relieves her of any requirement to exhaust grievance procedures before bringing this suit and, therefore, to allege she did so."); *City of Hartford v. Comm'n on Human Rights & Opportunities*, No. CV030520745S, 2004 WL 424197, at *16 (Conn. Super. Ct. Feb. 19, 2004) (finding that as a result of Connecticut Statute Section 31-51bb, the contractual remedies provided by the collective bargaining agreement "do not preclude [the plaintiff] from seeking relief under CFEPA").

---

[14] Plaintiff here filed his case in Connecticut Superior court, but Defendant subsequently removed it to federal court.

11

Therefore, Plaintiff's 46a-81c discrimination claim is not barred because of his not having exhausted the CBA grievance procedure.

Defendant briefly argues that "there is no language in Section 31-51bb *prohibiting* the 'right' under said statute from being 'bargained away' by [the] terms of a CBA," suggesting that Plaintiff, through the union, may have prospectively waived his right under Section 31-51bb to forego exhaustion of the grievance and arbitration procedures provided by the CBA and pursue statutory remedies directly in court. (Def.'s Reply at 10 (emphasis in original.)) Even if such a waiver were not void as contrary to the public policy articulated by the statute,[15] Defendant makes no argument that the CBA expressly waived this statute's protections, instead pointing only to language mandating that disputes "shall" be subject to the CBA's dispute resolution procedure. Absent any contrary guidance from the Connecticut courts, this Court finds that if such a waiver is permitted, to be enforceable it must be made explicitly, and cannot simply be encompassed by general exhaustion requirements or waiver of a right to a judicial forum.

---

[15] "Waivers of statutory rights are not favored. . . . Parties may not waive statutory rights [when] a question of public policy is involved. Likewise, a law established for a public reason cannot be waived or circumvented by a private act or agreement." *Pereira v. State Bd. of Educ.*, 304 Conn. 1, 48 (2012) (citing *Santiago v. State*, 261 Conn. 533, 543–44 (2002)).

### III. Conclusion

For the foregoing reasons, Defendant's Motion is GRANTED in part and DENIED in part. Plaintiff's common law wrongful discharge claim in Count One is dismissed because Plaintiff is not an at-will employee. In Count Two, Plaintiff's Title VII and 46a-60 claims are dismissed, but his claim for discrimination in violation of 46a-81c may proceed.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 16th day of March 2017.